Cornelia **ROTHWEILER** (Plaintiff), Respondent,

v.

H. R. **CALLICOTT** (Defendant), Appellant.

No. 30033.

St. Louis Court of Appeals. Missouri.

March 17, 1959.

Motion for Rehearing or to Transfer to Supreme Court Denied April 13, 1959.

---

Louis L. Hicks, Clayton, for appellant.

Bernard A. Barken, St. Louis, for respondent.

ANDERSON, Judge.

This is an action to recover an alleged debt due plaintiff, Cornelia Rothweiler, from defendant, H. R. Callicott, which resulted from an alleged loan made by plaintiff to defendant. The defense made was that the loan was not made to defendant, but to Contractors, Inc., a corporation, for which defendant acted in procuring the loan. The case was tried to the court and resulted in a finding and judgment for plaintiff in the principal sum of $2,655, with interest in the amount of $955.80, aggregating a total judgment of $3,610.80, and costs. From this judgment, defendant has appealed.

Plaintiff's name in 1949 and 1950 was Cornelia Schlecht. She had been a friend of defendant and his wife for about five years prior to that time. She had worked with Mrs. Callicott and associated with the Callicotts socially. Plaintiff testified that around November, 1949, defendant said he would like to borrow some money; that

defendant said he needed about $4,000, saying he wanted to invest it in some company in which he was interested. Plaintiff further testified that in December, 1949, she loaned defendant $2,510.74, and that defendant stated at the time he would pay her six per cent interest on the loan. Plaintiff stated that she knew defendant worked as a salesman for the Harry Fine Realty Company. The payment of the $2,510.74 was by a cashier's check of the American Exchange National Bank dated December 2, 1949, payable to Cornelia Schlecht. This check was endorsed in blank by Cornelia Schlecht, and under said endorsement appears the following stamped endorsement: "Pay to the order of Cass Bank & Trust Co., St. Louis, Mo., Contractors, Inc." Plaintiff testified she did not see this latter endorsement until she received the photostatic copy which was introduced in evidence at the trial. Plaintiff testified that she gave this check to defendant personally. Plaintiff never received any note or stock for this money. She stated she never talked to anyone except Mr. Callicott concerning the money.

On December 9, 1949, plaintiff received a check payable to her in the sum of $10.74. This was a check of Contractors, Inc., drawn on the Cass Bank & Trust Company, payable to Connie Schlecht. Plaintiff testified she did not remember receiving this check, but, after it was shown to her, stated there was no question in her mind that she did receive it. Defendant testified that the check was given plaintiff so that "the loan would be twenty-five hundred even."

On February 16, 1950, plaintiff gave defendant another check. This check was for $1,500, which she stated was a part of the $4,000 defendant originally requested. The day before defendant was given the check he requested it be made payable to Contractors, Inc. Plaintiff complied with this request. She stated there was no discussion between her and defendant to the effect that the loan was for Contractors, Inc.

Plaintiff further testified that during the time she was associating with the Callicotts she assumed defendant was interested in Contractors, Inc. She knew "they were interested in the subdivision, but I didn't know the name of the subdivision."

Defendant testified that he was associated with Contractors, Inc., and that its business was to build and sell homes in a subdivision called "Cardinal Hills." Contractors, Inc., at the time of the trial below was no longer in existence.

In June, 1951, defendant gave plaintiff a check for $1,000 and, in August, 1951, a check for $345. Both were checks of Contractors, Inc., drawn on the Cass Bank & Trust Company, and both were signed "Contractors, Inc., H. R. Callicott, Vice-Pres. & Treas., Joseph Blake, President." These checks were not handed to plaintiff personally by defendant. Plaintiff stated she "had to pick them up at his office because I needed the money."

On the $1,000 check appears the following endorsement: "Payment on note. Balance Due $3,000.00 Plus Interest. Connie Schlecht." On the $345 check there appears the following endorsement: "Payment on note. Payable to the Bank of St. Louis. Connie Schlecht." As heretofore stated, plaintiff testified she did not receive a note for said loan. Defendant testified that he wrote both endorsements with respect to the checks being payment on a note. He testified he thought Contractors, Inc., had given plaintiff a note for the loan. Plaintiff testified with respect to the $1,000 check: "I don't remember looking at it, at who the check was from."

Plaintiff further testified that in April, 1949, she had made a loan to defendant. The amount of this loan was either $500 or $1,000, and was paid in September, 1949. This loan was made to defendant personally. She stated at the time the loan was made defendant gave her "some sort of a deed to hold." She did not know whether it was a deed or mortgage. When defendant was asked on cross-examination if such a loan was made he answered, "not that I know of, no."

Plaintiff further testified that the total amount of the loan was $4,010.74, and that she had been paid back $1,345, leaving a balance due her of $2,665.74.

At the close of the whole case plaintiff amended her petition to reduce her demand in the sum of $10.74, the amount paid her December 9, 1949.

Defendant testified that in 1949 he was in the real estate business and associated with Contractors, Inc., a building concern, its business being to build and sell homes. He further testified: "Well, Miss Schlecht, as she was then, was a good friend of my wife, and we met occasionally. And Miss Schlecht also knew Mr. Correa, who was another officer and investor in this company. So, in one of the meetings that we had socially, why, she mentioned that she had some money she would like to invest on a loan. She knew all about our operations because we were constantly talking about it. So, when she said she had this money, why, I mentioned to her one time that she could loan it to the building company, and, as a result, she made a loan, advanced fifteen hundred dollars at one time and twenty-five hundred dollars at another time." Defendant stated he never promised plaintiff that he, personally, would repay these loans, but did tell her that it was a loan to Contractors, Inc.

On cross-examination, defendant testified that at one time he worked for the Southwest Bank of St. Louis, and in 1934 pleaded nolo contendere to charges of misapplying funds of that bank, with the result that he was sentenced to three years imprisonment in the Southwestern Reformatory in Arena, Oklahoma.

Defendant gave the following testimony:

"Q. Was anybody ever present with you when you discussed with Mrs. Rothweiler the loan of this money, this four thousand dollars? A. I believe there was. I think several times

there was somebody present. I think my wife was present once. I think Mr. Blake was present at one time.

"Q. And it was made clear, was it, that this money was not to go to you, it was going to this company, is that right. A. That is right."

Neither defendant's wife nor Mr. Blake testified at the trial.

Defendant offered in evidence deposit slips showing that the money received from plaintiff was deposited to the account of Contractors, Inc.

The points relied upon by appellant on this appeal relate to only one proposition, namely, that the weight of the evidence preponderates in favor of defendant and, for that reason, the judgment should be reversed.

This was a non-jury case and our duty, therefore, is to review the law and the evidence as in suits of an equitable nature. We must make our own findings of fact and reach our own conclusion as to where the weight of the evidence lies, giving due regard to the opportunity of the trial court to judge the credibility of the witnesses. The judgment may not be set aside unless clearly erroneous. Section 510.310 RSMo 1949, V.A.M.S.; Midland Realty Co. v. Manzella, Mo.App., 308 S.W.2d 326; Faire v. Burke, 363 Mo. 562, 252 S.W.2d 289; Minor v. Lillard, Mo.Sup., 289 S.W.2d 1; Opperman v. LaBrot, Mo.App., 283 S.W. 2d 902; United Farm Agency v. Cook, Mo.App., 283 S.W.2d 6; Avellone v. John Weisert Tobacco Co., Mo.App., 213 S.W. 2d 222; In re Diehl's Estate (Diehl v. Diehl), Mo.App., 239 S.W.2d 523; Toler v. Atlanta Life Ins. Co., Mo.App., 248 S.W. 2d 53.

There were only two witnesses at the trial—plaintiff and defendant. Plaintiff testified unequivocally that defendant represented to her that he wanted to borrow the money for the purpose of investing it in the company in which he was interested.

She also testified that she was not told that the money was being borrowed for Contractors, Inc., and that she never talked with anyone other than Callicott concerning this loan. Defendant's evidence was to the contrary. The gist of his testimony was that the money was being borrowed for Contractors, Inc., and that plaintiff was fully informed of this fact. Defendant also said that conversations regarding this loan were had in the presence of his wife and Mr. Blake, President of Contractors, Inc. It is significant that neither Mr. Blake nor the wife of defendant were called as witnesses in the case, and no excuse offered for their nonproduction. No other officer of Contractors, Inc., testified. No records of the corporation showing a loan to it were offered in evidence. There was no receipt given plaintiff showing that the real borrower was the corporation. Nor was there any note given to evidence the loan. No stock or security for the loan was turned over to her. It is apparent that plaintiff had implicit confidence in defendant, by reason of their social connections and her previous experience in loaning money to him.

Much reliance is placed by defendant upon the fact that the check for $1,500 was made payable to the corporation, and the fact that repayment was made to plaintiff by checks drawn upon the bank account of Contractors, Inc. We do not believe these facts conclusively show that the loan was made to the corporation rather than to defendant, but were circumstances to be weighed by the trial judge in passing upon the issue presented. It might well be that if defendant wanted to invest in the corporation he would request that any check covering the loan to him be made to the corporation, and that through some arrangement with the latter the checks in partial satisfaction of defendant's loan be drawn by the corporation on its account.

This is a case where the trial judge had an opportunity to observe the witnesses and their demeanor on the stand. He was, therefore, in a better position to pass upon

·their credibility than we are with the cold record before us. We are therefore inclined to defer to his finding and hold that, on the record as made, the judgment below was correct and it should be affirmed. It is so ordered.

WOLFE, P. J., and RUDDY, J., concur.