MALFRED K. WILCOX *d.b.a.* BUD'S ELECTRIC CO. *vs.* THOMAS A. HENDERSON, JR.

APRIL 8, 1960.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

PAOLINO, J. This is an action in assumpsit to recover a balance allegedly due for labor and materials furnished to the defendant. Prior to the trial the defendant died and Evelyn K. Henderson as administratrix of his estate was substituted as a party defendant. However, hereinafter the original defendant will be referred to as the defendant. The case was tried before a justice of the superior court sitting with a jury and resulted in a verdict for the plaintiff for

the full amount of the claim. It is before us on the defendant's exceptions to the denial of his motion for a directed verdict, to a certain evidentiary ruling, and to the denial of his motion for a new trial.

The principal issue before the jury was whether plaintiff did the work in question for defendant personally or for a corporation of which defendant was president and in which he owned 48 per cent of the stock.

In October 1955 defendant purchased a piece of property in Hope Valley consisting of a parcel of land and an old mill building. He took title jointly with his wife and two sons. Sometime thereafter he let the building to Hope Valley Farms, Inc. for use and occupancy in the chicken dressing business.

It appears that on December 8, 1955 a corporation known as Hope Valley Farms, Inc. was organized under the laws of this state for the purpose of engaging in the poultry business. One hundred shares of stock were issued as follows: Forty-eight shares to defendant, fifty shares to Jesse Rubin of New York, and two shares to one of defendant's sons. The defendant became president of the corporation and Nicholas M. Musto was the secretary and treasurer. Mr. Musto owned no stock therein. He had been employed by defendant in the poultry business prior to the formation of the new corporation and became general manager thereof.

The building was run-down and among other things needed an entirely new electrical system requiring the removal of the old wiring and the installation of new wiring.

It is uncontradicted that plaintiff, an electrical contractor, was engaged to do the work in question and to furnish both labor and materials. We are not concerned in this proceeding with any question relating to the amount of the verdict. The dispute between the parties is whether plaintiff contracted with defendant individually so as to render the latter personally liable for the amount claimed or

whether defendant engaged plaintiff on behalf of Hope Valley Farms, Inc. to do the work for it.

At the hearing in the superior court plaintiff testified that in December 1955 he had a conference with defendant with respect to tearing out the old wiring; that after this work had been completed he was hired by defendant to install the new wiring; that he did the work and supplied the materials requested by defendant; that he told him at that time he would buy the materials for defendant and charge him the cost of handling the material and the labor plus 10 per cent; and that defendant agreed to this arrangement.

The plaintiff started the job sometime in the latter part of December 1955 and continued with the work for about three months. He testified that he received a payment of $3,000 on account in February 1956; that at some later date defendant asked him to bill the work to the corporation so as to protect defendant; that although he was doing business throughout with defendant, he billed him by a statement dated February 24, 1956 in the manner requested; that at the time of his agreement with defendant and prior to submitting such statement he did not know of the existence of any corporation known as Hope Valley Farms, Inc.; that the arrangements for the work were made by him solely with defendant; and that defendant agreed to pay for the job.

It appears from the statement dated February 24, 1956 that for the period from December 30, 1955 to February 15, 1956 plaintiff had supplied labor and materials amounting to $8,442.05. The statement indicates that $6,459.05 of this amount was for materials and that a payment of $3,000 had been received on account. It is apparent that plaintiff was not receiving payments as fast as the work progressed and that he was not paying his supplier, United Electric Supply Co., Inc., for the materials which the latter had furnished for this job. Consequently sometime in February 1956 the supplier arranged a conference at the Hope Valley Farms, Inc. between the plaintiff, his attorney, the defendant, one

of defendant's sons, Nicholas M. Musto, and representatives of the supplier.

At this conference the supplier presented a document in the form of a guarantee prepared by it which expressly recited that a contract had been entered into between plaintiff and Hope Valley Farms, Inc. The defendant was asked to sign the guarantee personally, but he refused to do so. The plaintiff testified that he knew nothing about the guarantee at that time and that he had no part in preparing or presenting it. It is not denied that plaintiff's attorney prepared and presented to defendant at the conference a promissory note which plaintiff wanted signed by the corporation and defendant personally. The plaintiff stated he wanted this note signed in order to protect himself, but that defendant refused, saying he would not make himself liable because he was not the only one involved and that there were others interested besides himself.

Notwithstanding the failure of defendant to sign such documents plaintiff continued with the work. He received payments of $200 on March 8, $300 on March 16, and $200 on March 23, 1956. He received no further payments thereafter, but submitted a statement dated March 26, 1956. He testified that defendant stated to him at that time, " 'You are not being hurt,' he said, 'I will see that you are paid myself.' " It appears from such statement that plaintiff had furnished labor and materials totaling $11,648.65; that he had received payments of $3,700 on account; and that the balance due was $7,948.65.

It is not denied that all the statements rendered by plaintiff were billed to Hope Valley Farms, Inc.; that all the payments received by him were by checks of the corporation; and that the account stood on the books of plaintiff in the name of the corporation.

Nicholas M. Musto and one of defendant's sons testified for defendant. The substance of their testimony was that the work in question had been ordered by the corporation

and not by defendant personally. Mr. Musto testified that originally he, and not defendant, had engaged plaintiff to do the work for the corporation and that plaintiff was aware of this at the time. The defendant did not present any corporate records indicating that it had ordered the work in question or authorized it to be done on the corporation's account.

It appears that in May or June 1956 plaintiff received a notice from the referee in bankruptcy that Hope Valley Farms, Inc. was in bankruptcy. The plaintiff did not file any claim against the corporation and did not participate in the bankruptcy proceedings. Shortly after the receipt of such notice and during defendant's lifetime he instituted the instant action.

One of plaintiff's attorneys appeared as a witness for him. While being cross-examined by defendant's counsel he was asked whether there was any discussion at the conference held in February 1956 relative to defendant's assuming the obligations of Hope Valley Farms, Inc. The witness replied in the negative, whereupon he was further asked, "None at all?" The witness replied, "No, Mr. Henderson regarded it as his own personal debt." The defendant's motion to strike this answer was denied.

The defendant's contention under exception 16 that such ruling constituted prejudicial error is without merit. Without question the negative part of the answer was responsive. We understand defendant's motion to refer only to that part of the answer where the witness stated that Mr. Henderson regarded it as his own personal debt. We are of the opinion that it was not reversible error. The plaintiff's entire case was based on his assertion that defendant personally had ordered the work done and that he had agreed to pay for it personally. There is other evidence in the record to support such assertion. In such circumstances we cannot say that defendant was prejudiced by such ruling. See *D'Ambra* v. *Ohanian*, 77 R. I. 218, 221. Exception 16 is overruled.

478

Under exceptions 39, 40 and 41 defendant contends that in the circumstances the trial justice erred in denying the motion for a directed verdict. In effect he argues that the documentary evidence so overwhelmingly preponderated against plaintiff's oral testimony that the only reasonable conclusion that could be drawn from all the evidence was that plaintiff was not entitled to recover. He relies on *Arch Lumber Co.* v. *Archibald,* 88 R. I. 49, 143 A.2d 679, for his further contention that he was entitled as a matter of law to a directed verdict.

We cannot agree with either contention. For obvious reasons the instant case is not governed by that case. The factual situation in the two cases is materially different. The real issue in the case at bar is very narrow. It relates solely to what happened in the latter part of December when plaintiff was originally hired by defendant to do the work in question before plaintiff actually started it and before he made any entries on his books or submitted any bills or statements. The ultimate issue of fact is whether at that time plaintiff was engaged by defendant personally or on behalf of the corporation. The evidence is in direct conflict on this issue. On a motion for a directed verdict the trial justice must view the evidence most favorably to the adverse party and cannot pass on the credibility of the witnesses or the weight of the evidence. If there is any evidence to support such party's right of action he is required under our decisions to submit the case to the jury. *Goodwill Advertising Co.* v. *Elmwood Amusement Corp.,* 86 R. I. 6, 133 A.2d 644; *Corcione* v. *Ruggieri,* 87 R. I. 182, 139 A.2d 388. Exceptions 39, 40 and 41 are overruled.

Under exception 43 defendant contends that the trial justice erred in denying the motion for a new trial. He argues that the great weight of the evidence preponderates against the verdict; that the verdict is based wholly on evidence which, though not contradicted or denied by other evidence, is inherently self-contradictory or opposed to es-

tablished physical facts; that the trial justice misconceived and overlooked material evidence; and finally that he misapplied the law.

We have carefully examined his rescript and are of the opinion that it clearly indicates he reviewed the evidence and exercised his independent judgment in weighing it and in passing upon the credibility of the witnesses. As a result he concluded that plaintiff's testimony that defendant had personally engaged him to do the work without any reference to the corporation was the truth. He also concluded that there was nothing inherently improbable either in plaintiff's testimony or in his manner of testifying which would lead him to disbelieve plaintiff.

It is clear that the trial justice also accepted as true plaintiff's testimony that he billed the corporation merely for the convenience of defendant at the latter's request. He also stated correctly that in the absence of any claim or evidence of novation the issue of contractual liability had to be determined as of the date of the making of the agreement to do the work. He did not overlook the fact that the testimony of defendant was not available because of his death before the trial, but he concluded that on the basis of all the evidence, even though reasonable men could differ thereon, the verdict did substantial justice between the parties.

After careful consideration of the evidence, keeping in mind, as we must, the real issue in the case, we are satisfied that there is no merit in defendant's claim that the great weight thereof preponderates against the verdict. Nor is there any merit in the claim that plaintiff's testimony is inherently self-contradictory or opposed to established physical facts. All the evidence was in such sharp conflict on the real issue that the question was one of credibility.

Since in our opinion the trial justice performed his duty in passing on the motion for a new trial, his decision is entitled to great weight and will not be disturbed unless it

is clearly wrong or he has misconceived or overlooked material evidence. We find nothing in the record to indicate that he misconceived or overlooked any material evidence and hence we cannot say that his denial of the motion was clearly wrong.

There is no merit in the defendant's contention that in passing on that motion he applied an incorrect rule of law with respect to the issue of the burden of proof in a case where the real defendant is deceased. The cases cited by the defendant on this question are not in point. Moreover in the absence of an exception to the charge, the law as given therein became the law of the case. The only question before the trial justice on this motion was whether the jury followed the charge as given. Under our practice the trial justice may not reverse the law given therein to the jury, and he must apply the same law when he exercises his independent judgment in passing on the evidence, the weight thereof, and the credibility of the witnesses. *Mingo* v. *Rhode Island Co.*, 42 R. I. 543; *Lee* v. *Kindelan*, 80 R. I. 212, 219. There is nothing in the record indicating that either the jury or the judge failed to apply the law of the case. Exception 43 is overruled.

The exceptions which have been neither briefed nor argued are deemed to be waived.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the verdict.

*Oliver Crandall, Aram A. Arabian,* for plaintiff.

*Edward M. Botelle,* for defendant.