Wilbur A. SALE and Arthur F. D. Evans, Jr., d/b/a Sale & Evans, Plaintiffs-Respondents,

v.

Charles A. BROWN and Martha M. Brown, Defendants-Appellants.

No. 32019.

St. Louis Court of Appeals.

Missouri.

Nov. 16, 1965.

Lane & Leadlove Frank J. Lane, Jr., St. Louis, for defendants-appellants.

Max C. Nelson, James C. Jones, III, St. Louis, for plaintiffs-respondents.

BRADY, Commissioner.

This is an action for the recovery of the balance due under an oral contract for legal services rendered in an alleged income tax deficiency. A jury being waived, the trial court heard the matter and entered judgment in favor of the plaintiffs in the sum of $1480.00 less $320.00 paid into court plus interest and costs.

The petition alleged that defendants employed plaintiffs to represent them before the U.S. Tax Court agreeing to a fee of $3520.00; that plaintiffs did represent the defendants; and that defendants had paid only $2040.00 and had refused to pay the balance. The defendants pleaded that they were personally obligated to pay only a portion of the fee, the Sterling Engineering Company being liable for the other portion, and that they had paid their fee except for the $320.00 which they deposited with the court. They also set up the defense that any agreement on their part to pay the indebtedness of the Sterling Engineering Company was unenforceable under this state's statute of frauds. In stating the facts that bear upon the issues herein raised we will refer to the Sterling Engineering Company as "the company." The plaintiffs and the defendants will be referred to by their designation in the trial court or by their names.

Charles Brown was the president and principal stockholder of the company. The business was conducted at his residence, and the company's physical assets were located in the basement of that residence. The company had issued 400 shares of stock and Brown owned all but four. Several years prior to the events which gave rise to this action the Internal Revenue Service had asserted an income tax deficiency against the defendants based upon allegedly unreported income during the years 1948 to 1952. This deficiency was computed by the Internal Revenue Service on the "net worth" method and the company was included in the tax claim on the theory that the alleged unreported income must have been received by the defendants from the company which in turn was considered to have unreported income in a similar amount. Mr. Brown negotiated with agents of the Internal Revenue Service directly for several years and eventually obtained a settlement figure which he considered excessive. In July of 1958 he consulted with the plaintiff Sale, an attorney engaged in the practice of law. Inasmuch as

the deficiency claimed against the defendants was merely carried over to the company's alleged tax indebtedness, Sale informed the defendants that his fee would be based on the time spent and the results achieved but would not exceed 25 per cent of the amount plaintiffs were able to save the defendants on the alleged deficiency plus expenses. He asked for and received a retainer of $1,000.00 which Brown paid by check drawn on the company. The plaintiffs took over the matter and arranged for a certified public accountant to audit the defendants' tax records. In September of 1958, the plaintiffs, as attorneys, filed a petition in the U.S. Tax Court on behalf of the Browns and a separate petition on behalf of the company. The Browns and the company were billed separately for the $10.00 court costs necessary in each case. Sale testified that the crux of the case involved disproving the alleged additional unreported income of the Browns as individuals because if that could be done, the claim against the company would be similarly defeated and therefore the services required in connection with the tax claim against the company were very minor in nature and consisted merely of filing pleadings and handling formal matters in the tax court.

In December of 1959 plaintiffs reached a tentative settlement of the tax claims with the Internal Revenue Service and arranged a conference with defendants to discuss the matter. At this time the company was for all practical purposes defunct and had little or no assets. At this conference the defendants expressed their concern about their personal liability for the tax claim against the company and Sale advised them that they could not be personally charged with such liability unless it could be shown that they had wrongfully taken corporate assets. The parties again discussed the amount of the plaintiffs' fees and an agreement was reached for a fee of $3500.00 which, after deducting the retainer paid, left a balance of $2500.00. It is this agreement that furnishes the basis for plaintiffs'

action. Sale testified that he told the defendants at that time that the reduced fee was to be paid by them personally and not by the company, " * * * that we were not looking to a defunct corporation." His further testimony was that it was never mentioned that anyone else but the Browns personally would pay any of the fee. Mr. Graham, a certified public accountant who had been employed by the plaintiffs to work on defendants' tax problem, was present at this conference and his testimony as to the Browns' personal liability for the fee was to the same effect as that of Sale.

Ten days after this conference the plaintiffs billed the defendants individually for the $2500.00. The plaintiffs sent bills for this amount to the Browns in January, February, March, and April of 1960. Sale's testimony was that the defendants made no complaint about this matter of billing but Mr. Brown testified that he complained that he and his wife were being improperly billed. In May of 1960 the Internal Revenue agents came to Brown's house and made a physical inventory of the assets of the company and at that time gave Mr. Brown reason to believe that they intended to seize the assets. During that same month Mrs. Brown spoke to the plaintiff Evans and asked him to send a bill addressed to the company for one-half the balance of the fee then due and this was done on May 20. She testified that she had been told by the "revenue agent" that she should be careful and not effect the transfer of any of the company's assets by paying any of " * * * our bills or anything like that." The plaintiffs billed the defendants in September, October, November, and December of 1960, and in January and February of 1961 for the balance due on the entire fee. The defendants made partial payments from time to time and in May of 1960 paid the amount of $100.00 with a check drawn on the company. All the other checks were personal checks and all of the checks sent the plaintiffs after the May bill for one-half the fee contained the notation "Payment on account of Mr. and

Mrs. Charles A. Brown as per your bill of May 20, 1960."

Early in the case the defendants' counsel stipulated in open court that $3500.00 was a reasonable fee stating, " * * * The only question we have here is as to who is responsible to pay that fee." During the cross-examination by defendants' counsel of the certified public accountant employed by the plaintiffs, the defendants' counsel asked the following question: "Would you mind telling me precisely what you did do in your work in this case in attempting to determine the tax liability of the Browns? A Of the Browns? Q And of the corporation. Go into detail." After proceeding with this form of interrogation the defendants' counsel then stated: "At this time I am going to withdraw my stipulation as to the reasonableness of the fee. I think we have gone into this enough." The court refused permission for the withdrawal of the stipulation.

The defendants raise three allegations of prejudicial error. They contend "[t]he trial court's judgment was against the greater weight of the credible evidence · * * *"; that the defendants were at most guarantors of the indebtedness of the company and as such could not be charged with such indebtedness unless the plaintiffs produced a writing complying with the statute of frauds; and that the trial court erred in refusing to allow the defendants to withdraw their stipulation as to the reasonableness of the plaintiffs' fee.

█ This was a jury-waived action and our duty is to review the law and the evidence as in suits of an equitable nature. We are to make our own findings of fact and reach our own conclusion as to where the weight of the evidence lies. The judgment is not to be set aside unless clearly erroneous and we are to give due regard to the opportunity of the trial court to judge the credibility of the witnesses. Rothweiler v. Callicott, Mo.App., 322 S.W.2d 151, l. c. 154; § 510.310, RSMo 1959, V.A.M.S.

█ The defendants urge that the trial court's judgment was against the greater weight of the credible evidence because both defendants testified that they had always expected that the company would be responsible for part of the bill and because the plaintiffs made separate billings. There is no merit to this allegation of prejudicial error. In the first place there was a direct conflict in the testimony of the parties as to how this fee was to be paid. The trial court had the witnesses before it and was in a much better position to judge their credibility than is this court. He chose to believe the plaintiffs' testimony and we cannot find it clearly erroneous to have done so as there was ample evidence to support plaintiffs' case. By the time .the settlement conference was held, it was obvious to all the parties concerned that the company was a defunct corporation. It strains credulity to argue that in spite of the knowledge of the company's financial condition gained through working with this tax problem from July of 1958 to December of 1959, the plaintiffs would have agreed to a reduced fee and further agreed to look to a soon-to-be defunct corporation for a portion of that fee. Moreover, the testimony of the witness Graham cannot be totally disregarded. It is true that he was not completely disinterested as he was employed by the plaintiffs but that fact would go to the weight to be given his testimony. That fact standing alone would not justify totally disregarding his corroborating testimony the defendants agreed to personal liability for the whole fee. In the second place there is no evidence to support defendants' contention there were two promises to pay here involved: one by the Browns and one by the company. Certainly, this record is totally devoid of any testimony by either of the Browns leading to the inference they were speaking for the company or other than as a private person. The fact the company might incidentally benefit from the plaintiffs' effort in behalf of the defendants does not give rise

to an inference that the company agreed to bear a portion of the fees. Neither does it justify the conclusion the company is legally chargeable for a portion of the fees. There is no basis in this transcript for any promise by the company.

■ There are only two instances of separate billings. The first was in connection with the court costs of filing the tax claims. That fact has little pertinency. The question is what agreement was made at the settlement conference. As indicated above, we think the trial court was justified in finding that at that meeting an agreement was reached for a reduced fee and for the defendants to be personally liable for its entire amount. That is the agreement upon which the plaintiffs bottomed their action and upon which the parties joined issue at the trial. Accordingly, what was done previous to that time would have little value in explaining the parties' new agreement. Of course, if the trial court had believed the defendants' testimony as to the new agreement, then the fact they made separate bills for court costs in the beginning would have more importance as showing a continuing, consistent course of action. But the trial court did not choose to believe the defendants and, as we have indicated, it had every right not to do so. This fact then becomes of little importance.

■ The other occasion upon which separate bills were rendered was in May of 1960. The parties agreed that this was done in compliance with Mrs. Brown's special request. This was undoubtedly an action that prejudiced the plaintiffs' case but coming as it did in response to a special request by one of the defendants, we feel the trial court, in the light of the whole case, was justified in regarding the plaintiffs' action as an accommodation only. (See Wilcox v. Henderson, 90 R.I. 472, 159 A.2d 797, where the trial court, as in the instant case, found as true the plaintiff's contention he billed the corporation there involved "for convenience.") In any event, this action standing alone does not rise to the position of strength given it by the defendants so as to require this court to hold the trial court's judgment was " * * * against the greater weight of the credible evidence * * *."

■ The defendants contend the evidence as to how they made their payments and the fact the initial retainer was paid by a check drawn on the company requires this court to rule in their favor. A similar contention was made in Rothweiler v. Callicott, supra, where the fact that a check was made payable to a corporation and repayment made by checks drawn on the corporation was urged to show conclusively the loan was made to the corporation there involved. This court rejected that argument holding that these factors were but circumstances to be weighed by the trial judge. In the instant case the fact that the retainer fee was paid by a check drawn upon the company as was the May 1960 payment can be interpreted as showing that the Browns treated the entire transaction as one all inclusive contract, and, indeed, treated the company as merely an alter ego. It is as susceptible to that interpretation as it is to that which the defendants give it. The self serving unilateral notations on the back of the checks paid upon the account after the separate billing of May 1960 are but a circumstance to be weighed along with the other factors in the case. In any event, these factors alone do not, to our mind, outweigh the clear and unequivocal testimony of the plaintiff Sale and of the witness Graham. Essentially, this case is one that cries out for the application of the rule of deference as there is nothing in this record to indicate that the decision the trial court reached upon consideration of two opposing lines of testimony was so clearly erroneous as to call for our intervention. Rothweiler v. Callicott, supra.

■ The defendants' contentions with regard to an alleged violation of the statute of frauds (§ 432.010, RSMo 1959, V.A. M.S.) must be considered in the light of the

trial court's acceptance (and our affirmance of that acceptance) of plaintiffs' theory that there was but one promise here involved and that was the promise of the defendants to pay the entire fee. As we understand the defendants, they contend that even if they had agreed to pay the entire fee that agreement constituted an oral obligation to guarantee the debt of the company and is unenforceable by the reason of the statute of frauds. As indicated by our remarks at the beginning of our consideration of this allegation of error, we do not think the evidence justified the conclusion that the company made any agreement to pay any portion of the fee or that it was legally obligated to pay any portion thereof. That being so, there is no issue in this case involving the statute of frauds as, so far as this record discloses, the company owed no debt to the plaintiffs. Accordingly, this is not an attempt to charge the defendants upon a promise to answer for the debt of another; i. e., the company and the statute of frauds has no application.

■■■ Even if we were to assume the company was a party to the agreement to pay, that would still not render the statute of frauds applicable. One of the tests applied by the courts to determine whether the statute of frauds applies is whether the promise or agreement under consideration constitutes an original and independent undertaking between the promisor and the promisee or whether the undertaking of the promisor is collateral. In Wahl v. Cunningham, 320 Mo. 57, 6 S.W.2d 576, 1. c. 581, 67 A.L.R. 489, it was held that " * * * [w]henever it appears that the leading or main purpose of the promisor is to gain some advantage for himself, or to promote some interest or purpose of his own, rather than to become the mere guarantor or surety of another's debt, and the promise is made upon a consideration beneficial to the promisor, it will be regarded as an original undertaking and not within the statute of frauds, although it may, in form, be a promise to pay the debt of another. * * "

It is also the rule that if a contract is mainly for the benefit of an individual, it is not rendered unenforceable under the statute of frauds merely by reason of the fact that a corporation in which the individual is interested receives an incidental benefit during the performance of the contract. In 35 A.L.R.2d at page 933, the rule is stated in this fashion: "It is obvious that where a promise is in form and effect an original one to pay for something to be simultaneously or subsequently furnished to, or done for, a corporation in which the promisor is a stockholder, officer, or director, the promisor is the original debtor, and does not become collaterally liable merely because the corporation receives the benefit of performance by the promisee. Hence the promise is not within the statute of frauds." The defendants' allegation of error with regard to the statute of frauds is without merit.

■■■ The last allegation of prejudicial error is based upon the trial court's action in refusing to permit the defendants to withdraw their stipulation as to the reasonableness of the fee allegedly due. The defendants cite three occasions in the transcript where they contend the plaintiffs did in fact introduce evidence going to the reasonableness of the fee over their objections. The first of these references to the transcript is of no assistance to the defendants. The objection that was then made by defendants' counsel was sustained and nothing appears from the transcript that could have any bearing upon the reasonableness of the fee. The second reference to the transcript cited by the defendants discloses that over the defendants' objection the plaintiff Sale was allowed to testify that the only work done for the company was the preparation of the pleadings in the tax court case and that the amount of plaintiffs' work in that regard would have been limited to a charge of $250.00. This evidence when placed in context with the rest of plaintiff Sale's testimony went principally to the matter of the intention of the parties as to whether the

company and the defendants were each to be liable for a portion of the fee. The thread of testimony being developed at this time was whether the parties conceived of the company's tax case and the defendants' tax case as being two separate and distinct transactions and whether they treated the matter as two separate transactions in their discussion about the fee to be charged. Viewed in this light it is clear that the admission of this evidence would not warrant granting the defendants permission to withdraw their stipulation. This evidence had bearing upon the question of whether the Browns or the company was the original debtor as stated in the rule set out herein in the quotation from 35 A.L.R. 2d, page 933. It also went to whether or not the Browns' promise was to be regarded as an original undertaking and thus not within the statute of frauds. Wahl v. Cunningham, supra. We do not think that the testimony admitted over the defendants' objections did violate the stipulation, but even if it did, it constituted evidence that was clearly admissible upon one or more of the issues in the case and the rule is that where evidence is admissible for one purpose but would be improperly received for other purposes it should be received. Scott v. Missouri Insurance Co., 361 Mo. 51, 233 S.W.2d 660, l. c. 665.

There is one other point in the transcript where the defendants' counsel made objection on the ground that the evidence received violated the stipulation made. That is immediately preceding defendants' counsel's first request for permission to withdraw his stipulation. It may well be that the reason this portion of the transcript was not cited was that the evidence there given was stated in response to a question asked by the defendants' counsel. It was he who asked the witness Graham to explain what he did in attempting to determine the tax liability of the Browns and of the company and to go into detail with his answer. The defendants are in a poor position to complain of the admission of testimony given in answer to their own counsel's questions. However, we do not rule this matter upon that ground for, as a matter of fact, the answer given dealt with the theory and application of the "net worth" theory of computing tax liability and the answers given did not go into detail as to the division of the work between the defendants and the company as defendants' counsel had requested. The transcript discloses nothing that would justify granting permission to withdraw the stipulation.

The defendants further argue that they should have been permitted to withdraw the stipulation because the original arrangement was that the fee would not exceed 25 per cent of the amount plaintiffs were able to save the defendants. Defendants contend the evidence shows only $2000.00 was saved. We do not so read the transcript. It is devoid of any substantial evidence on the question of how much was saved by plaintiffs' efforts. In any event, that is not the agreement sued upon. Whatever agreement was first reached was superseded by the agreement for fees reached at the settlement conference in December of 1959 and the undisputed testimony is that that agreement was for $3520.00.

The judgment should be affirmed. The Commissioner so recommends.

PER CURIAM:

The foregoing opinion by BRADY, C., is adopted as the opinion of the court. The judgment is affirmed.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.