**WOLFF ARDIS, P.C., Plaintiff,**

**v.**

**KIMBALL PRODUCTS, INC., And Ron Kimball, Defendants.**

No. 02–2885 M1/V.

United States District Court,
W.D. Tennessee,
Western Division.

Oct. 21, 2003.

Patrick M. Ardis, Esq., Wolff Ardis, Memphis, TN, for Wolff Ardis, P.C., plaintiff.

Stephen F. Libby, Esq., Cochran Cherry Givens Smith & Bolton, Memphis, TN, for Kimball Products, Inc., Ron Kimball, defendants.

Kimball Products, Inc., Kimball Products Inc., Jeffrey Park, V.P., Benton Harbor, MI, Pro se.

Ron Kimball, Benton Harbor, MI, Pro se.

## ORDER DENYING DEFENDANT RON KIMBALL'S MOTION FOR SUMMARY JUDGMENT and ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF WOLFF ARDIS'S MOTION FOR SUMMARY JUDGEMENT

McCALLA, District Judge.

This case comes before the Court on the parties cross-motions for summary judgment. On August 18, 2003, both Plaintiff Wolff Ardis, P.C. ("Wolff Ardis") and Defendant Ron Kimball filed Motions for Summary Judgment.[1] Plaintiff responded in opposition to Mr. Kimball's motion on September 22, 2003. Defendant Mr. Kimball filed a reply to Plaintiff's Response on October 7, 2003. However, neither Defendant Kimball Products, Inc. ("Kimball Products") or Mr. Kimball responded to Plaintiff's summary judgment motion.[2]

---

1. On August 20, 2003, Plaintiffs filed an Amended Memorandum of Fact and Law in Support of Plaintiff's Motion for Summary Judgment. The Court relied on the Amended Memorandum for purposes of this motion.

2. On October 7, 2003, Defendant Ron Kimball filed a memorandum entitled Response of Defendants to Amended Memorandum of Fact and Law in Support of Plaintiff's Motion

For the reasons following, the Court DE-NIES Defendant's motion and GRANTS in part and DENIES in part Plaintiff's motion.

## I. Statement of Facts

Plaintiff Wolff Ardis, P.C. is a law firm located in Memphis, Tennessee. (Pl.'s Mot. for Summ. J. at 1.) In July of 1999, Kimball Products, a closely held corporation, hired Wolff Ardis to collect a debt owned to the corporation by Larry Morton. (*Id.*) To formalize the relationship, Patrick Ardis, a partner at the law firm, drafted an engagement letter outlining the terms of representation. (Def.'s Mot. for Summ. J. at 1.) Ron Kimball, the owner and majority shareholder of the corporation, signed the letter on behalf of Kimball Products on July 28, 1999. (Pl.'s Mot. for Summ. J. Ex. 1 at 1; Def.'s Mot. for Summ. J. at 1.)[3]

In the letter, Wolff Ardis set forth a schedule of attorneys' fees, as well as the terms of payment. (Pl.'s Mot. for Summ. J. Ex. 1 at 1.) The agreement provided that the client was to pay for all legal services and expenses on a monthly basis. (*Id.* at 2.) Failure to pay within thirty (30) days of receiving the bill would result in the assessment of a 1–1/2% per month or 18% per annum finance charge. (*Id.*) The contract also entitled Wolff Ardis to collect fees and costs associated with the collection of any debt. (*Id.* at 3.)

Pursuant to the engagement letter, Wolff Ardis performed billable services from July 27, 1999 to November 12, 2001. (Pl.'s Mot. for Summ. J. at 2.) During the course of the representation, Wolff Ardis issued twenty-six (26) billing statements charging the client for a total of 359.95 hours of work. (*Id.*) Neither Ron Kimball or Kimball Products made any any payments to Wolff Ardis.

According to Wolff Ardis, the law firm contacted Ron Kimball multiple times about the outstanding legal fees. Plaintiff alleges that during these conversations, Mr. Kimball "gave numerous guarantees and assurances that he would ensure that [the law firm] was paid for services rendered, even if he had to personally [pay] for the services." (Aff. of Patrick M. Ardis at ¶ 3.). In fact, the law firm asserts that in June of 2000, it decided to continue representation solely because Mr. Kimball promised to "personally assume responsibility for the legal fees." (*Id.* at ¶ 4.) The law firm further alleges that on June 13, 2000, Mr. Kimball paid $2,000 using a personal check. (*Id.* at ¶ 5.) Wolff Ardis argues that this payment serves as evidence of the parties agreement that Mr. Kimball would personally pay for the outstanding legal fees.

Mr. Kimball denies these allegations. In his affidavit, Mr. Kimball asserts that he used a check from his personal account because he did not have the checks for the corporate account when he met with the attorneys. (Aff. of Ron Kimball ¶¶ 1,6–7.) He also denies ever guaranteeing that he would be personally responsible for fees incurred by the corporation.

In spite of this controversy, there is no dispute that neither Ron Kimball nor Kim-

---

for Summary Judgment and Response of Defendants to Plaintiff's Reply and Supporting Memorandum to Defendant Ron Kimball's Motion for Summary Judgment. Despite its title, the brief does not address any of the arguments raised in Plaintiff's motion for summary judgment. Instead, the brief focuses on responding to the arguments Wolff Ar-

dis set forth in its response to Mr. Kimball's summary judgment motion.

**3.** Plaintiff does not argue that the engagement letter embodies an agreement between the law firm and Mr. Kimball. Instead, Plaintiff alleges that the engagement letter materialized the contractual relationship between it and the corporate entity, Kimball Products.

ball Products made any other payments after June of 2000. Consequently, on May 3, 2001, the firm notified Mr. Kimball that it would withdraw as counsel if Kimball Products did not submit a plan to pay its outstanding balance of $60,712.55. (Pl.'s Mot. for Summ. J. at 2.) According to Plaintiff, on July 17, 2001, Mr. Kimball committed to pay $500.00 per month towards the outstanding balance. (Id. at 3.) An additional $2,500 was applied to the balance after Wolff Ardis obtained a refund on a cash bond posted with the Chancery Court.[4] (Id.) Wolff Ardis only received one payment under the terms of this new arrangement.[5] (Pl.'s Mot. for Summ. J. at 3.)

Given the lack of success of the arrangement, Wolff Ardis decided to withdraw from the various matters in which it represented Kimball Products. (Id. at 3.) On October 19, 2002, Plaintiff withdrew from a case in front of the Chancery Court for the Thirtieth Judicial District of Memphis, Shelby County, Tennessee. (Id.) Similarly, on November 13, 2001, Wolff Ardis withdrew as counsel from a case before the United States Bankruptcy Court for the Western District of Tennessee. (Id.) The law firm then filed this suit in federal court for breach of contract. Wolff Ardis seeks damages totaling $90,904.19 with a per diem rate of $32.32, for unpaid legal fees and finance charges.

## II. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if . . . there is no genuine issue as to any materi-

al fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Supreme Court has explained that the standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, 106 S.Ct. 2548, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir.1989).[6]

## III. Analysis

As previously noted, both Wolff Ardis and Ron Kimball filed summary judgment motions on the same day. In its motion, Wolff Ardis urges the Court to grant summary judgment on breach of contract and unjust enrichment grounds. Although neither Defendant directly addressed these arguments in a response, in his own motion Mr. Kimball asserts that the engagement letter did not bind him personally, but was only intended to obligate the corporation. Wolff Ardis does not dispute this interpretation. In fact in its response to Defendant's motion, the law firm asserts

---

**4.** The amount of the bond is not clear from the briefs. In its summary judgment motion, Plaintiff asserts that the bond totaled $2,150.00, while a letter attached to the Affidavit of Ron Kimball as Exhibit B indicates that the amount is $2,500.

**5.** On July 23, 2001, Wolff Ardis received a payment of $500.00.

**6.** In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden–Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir.1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

that Mr. Kimball's responsibilities as an individual emerge not from the engagement letter, but from a separate oral agreement. Specifically, Wolff Ardis argues that Mr. Kimball's promise to become personally responsible for the outstanding fees created a new, separate agreement between him as an individual and the law firm. (*See* Pl.'s Reply and Mem. at 1–2.)

Not only does Mr. Kimball deny making these oral promises, but he also asserts the statute of frauds as an affirmative defense. Mr. Kimball argues that the statute of frauds prevents Plaintiff from attempting to enforce the alleged oral agreement between him and the law firm.[7] Given the important nature of this question, the Court first considers whether the statute of frauds prevents Wolff Ardis from asserting that there is an oral contract between the law firm and Mr. Kimball. The Court will then turn its attention to Plaintiff's summary judgment motion, where it will assess the breach of contract and unjust enrichment arguments.

### 1. Defendant's Summary Judgment Motion

As Defendant correctly notes, Tennessee law requires that certain contracts, promises or agreements be in writing in order to be enforceable. *See, e.g.,* Tenn.Code Ann. § 29–2–101(a)(2)(2000); *In Re: Es-*

*tate of Dickerson,* 600 S.W.2d 714, 716–17 (Tenn.1980). These types of agreements include "promises to answer for the debt, default, or miscarriage of another person." Tenn.Code Ann. § 29–2–101(a)(2).

■ Several exceptions, however, exist to this rule.[8] One such exception is the main purpose rule. This exception eliminates the need for a written agreement whenever the promisor makes an oral promise to pay for the debt of another for his own personal or economic advantage. As described in the Restatement (Second) of Contracts:

> A contract [promising to pay] all or part of a duty of a third person ... is not within the Statute of Frauds as a promise to answer for the duty of another if the consideration for the promise is in fact or apparently desired by the promisor mainly for his own economic advantage, rather than in order to benefit the third person.

Restatement (Second) of Contracts § 116 (1981).[9]

Wolff Ardis urges that Mr. Kimball's oral representations fall within the main purpose exception. Plaintiff avers that Mr. Kimball's promises were not intended to benefit a third party, but rather to protect his own interest in collecting the outstanding debt owed to his closely-held

---

7. Defendant also spends considerable time arguing that the engagement letter does not bind Mr. Kimball individually. Because Plaintiff does not ask this Court to hold Mr. Kimball responsible under the written contract the Court finds it unnecessary to address this argument.

8. *See, e.g. Squibb v. Smith,* 948 S.W.2d 752, 756 (Tenn.Ct.App.1997) (holding that an oral agreement to an apportionment of liability between two parties is not a promise to pay for another's debt and therefore does not fall within the statute of frauds); *Buice v. Scruggs Equip. Co.,* 194 Tenn. 129, 250 S.W.2d 44, 47 (1952) (enforcing a verbal contract when

there has been partial performance as to personal property); *Blaylock v. Stephens,* 36 Tenn.App. 464, 258 S.W.2d 779, 781 (1953) (holding that an agreement to release an individual from his debt and accept another person's debt instead is a novation and not a promise by a promisor to answer for another's debt).

9. *See also* E. LeFevre, *Statute of frauds, promise by stockholder, officer or director to pay debt of corporation,* 1954 WL 9118, 35 A.L.R.2d 906 (2002) (for a list of states that have adopted this exception when considering cases where a director, officer or stockholder promises to pay the debt of a corporation).

corporation. The law firm, however, does not cite to any Tennessee cases or statutes indicating that the state has adopted this exception to the statute of frauds. This Court's own review of available precedent has also failed to yield any Tennessee cases adopting this portion of the restatement. For this reason, the Court turns to other states for guidance on this issue.

Within the Sixth Circuit, both Kentucky and Ohio recognize an exception to the statute of frauds for cases where the promisor agrees to pay the debt of another in order to further some purpose of his own. *See, e.g. Barnett v. Stewart Lumber Company*, 547 S.W.2d 788, 790 (Ky.App. 1977); *Carl Meglan & Company v. Brumbaugh*, 1993 WL 531956 (Ohio App. Dec. 22, 1993). For example, in *Carl Meglan & Company v. Brumbaugh*, the Court of Appeals of Ohio considered a factual situation similar to the one before this Court. 1993 WL 531956 at *2. Here, the defendant was also an individual, who served as president of a closely-held corporation and owned half of the stock.[10] *Id.* 1993 WL 531956 at *2. Like Mr. Kimball, the defendant in *Carl Meglan* hired a law firm to assist with the collection of a pending debt on behalf of his corporation. *Id.* 1993 WL 531956 at *1. The corporation failed to pay a portion of the fees and the law firm sued to recover the outstanding balance. *Id.* 1993 WL 531956 at *1.

On appeal, the three judge panel considered whether the statute of frauds barred the law firm from asserting that the corporate officer had personally guaranteed to pay the fees. The court held that the promise to answer for the debt of another did not have to be in writing because the defendant had a pecuniary interest in making this promise. *Id.* 1993 WL 531956 at *2. The court reasoned that "a finding that the promisor was acting to serve his own interests converts the undertaking from an express promise to answer for the debt or default of another to an implied promise to pay for his own debt." *Id.* 1993 WL 531956 at *2.

Other courts outside the Sixth Circuit have reached the same conclusion. For instance, in *Sale v. Brown*, the Court of Appeals of Missouri used the same reasoning to uphold the trial court's conclusion that the statute of frauds did not apply to the oral promise of a corporate officer to pay for the legal fees of the corporation for which he served both as president and majority stockholder. 396 S.W.2d 750, 756 (Mo.App.1965). In making this finding, the court held that "whenever it appears that the leading or main purpose of the promisor is to gain some advantage for himself, or to promote some interest or purpose of his own, rather than to become the mere guarantor or surety of another's debt . . . it will be regarded as an original undertaking and not within the statute of frauds." *Id.* Similarly, in *Pravel, Wilson & Matthews v. Voss*, the Fifth Circuit, applying Texas law, found that a corporate officer and shareholder who induced a law firm to represent his corporation by making personal promises that he would be responsible for the fees could not invoke the statute of frauds as a tenable defense. 471 F.2d 1186, 1189 (5th Cir.1973).

■ This Court finds the reasoning in these cases persuasive. The Court agrees that an officer and shareholder of a corporation cannot use the statute of frauds as a shield when a law firm relies on his promise to represent the corporation. This is particularly true where, as in these cases reviewed, the individuals owned stock in closely held corporations and controlled a significant amount, if not all, of the corporate stock. For this reason, the Court concludes that a Tennessee court would

10. His wife and children owned all other shares. *Id.*

adopt the main purpose exception to the statute of frauds in cases where the promisor has a business or pecuniary interest in guaranteeing the debt of a third party. *See Gregg v. Johnson*, 2001 WL 912846, *5 (Tenn.Ct.App. Aug. 13, 2001) (where the Court of Appeals of Tennessee concluded that "[t]he application of the statute of frauds is not without limits, and courts should not allow a person to use the [s]tatute to avoid contracts or to grant a privilege to a person to refuse to perform what he has agreed to do") (internal quotations omitted).

As applied to this case, the Court finds that as the owner of Kimball Products, Mr. Kimball had an interest in pursuing the litigation against Larry Morton and recovering the owed monies. Accordingly, the Court holds that the main purpose exception applies to this case and DENIES Mr. Kimball's motion for summary judgment.

### 2. Plaintiff's Motion for Summary Judgment

The Court now turns its attention to Plaintiff's motion for summary judgment. As previously noted, Wolff Ardis seeks summary judgment on two grounds. First, it argues that failure to pay the legal fees constitutes a breach of contract. Second, the law firm invokes the equitable theory of unjust enrichment as grounds for summary judgment. Because Wolff Ardis asserts that two separate contracts exist (i.e., one between the law firm and the corporation and one between the law firm and Mr. Kimball), the Court considers Plaintiff's arguments as to each individual contract.

### A. Oral Contract Between Wolff Ardis and Mr. Kimball

■ Although the Court has decided that the absence of a written document is not sufficient to preclude the law firm from seeking compensation from Mr. Kimball, the Court does find that there is a factual dispute as to whether an oral contract actually exists between Mr. Kimball and Wolff Ardis. The parties disagree as to the content of the conversations between Mr. Kimball and Mr. Ardis, and the representations made during these conversations. While Mr. Ardis asserts that Mr. Kimball repeatedly promised that he would be personally responsible for the debt, Mr. Kimball denies ever making such promises. In light of these discrepancies, the Court DENIES Plaintiff's motion for summary judgment on breach of contract grounds.

■ The Court also DENIES Plaintiff's motion for summary judgment based on an unjust enrichment theory. The equitable doctrine allows the Court to infer a promise to pay for the reasonable value of the services rendered, where one party has conferred a benefit upon another. *Simpson v. Bicentennial Volunteers, Inc.*, 1999 WL 430497, *1 (Tenn. Ct.App. June 19, 1999). To establish a claim for unjust enrichment, a party must show that: (1) that valuable services were rendered, (2) to the person to be charged, (3) that the person to be charged reasonably understood that the provider expected to be paid, and (4) that it would be unjust for the benefitted party to obtain the benefit without paying for it. *Id.* Although there is no dispute that Wolff Ardis performed legal services on behalf of the corporation, a factual dispute does exist as to whether the parties expected Mr. Kimball to personally pay for the legal fees. Accordingly, the Court DENIES Plaintiff's motion as to unjust enrichment.

### B. Written Contract Between Wolff Ardis and Kimball Products

■ Unlike the oral contract, no real controversy exists involving the written contract. Neither Defendant Mr. Kimball nor Kimball Products challenges the validi-

ty of the written contract between the law firm and the corporation. In Mr. Kimball's own motion for summary judgment, Mr. Kimball does not dispute that Kimball Products entered into an agreement with Wolff Ardis. In fact, in Defendant's brief, Mr. Kimball asserts that " [b]ased on the engagement letter ... it was [clear to] the parties [that] ... Kimball Products ... was retaining the services of Wolff Ardis." (Def.'s Mot. for Summ. J. at 2.) Similarly, at the hearing held on October 9, 2003, counsel for Defendant acknowledged that Kimball Products owed money for breaching the contract.[11] It is clear from the evidence that Kimball Products engaged Wolff Ardis for legal services and that the company did not pay for these services. Defendant Kimball Products' actions in this regard constitute a breach of contract. Accordingly, the Court GRANTS summary judgment for Plaintiff Wolff Ardis on the breach of contract claim.[12]

Plaintiff, however, has not presented sufficient evidence to enable this Court to determine whether the fees charged by Wolff Ardis conform to the terms of the engagement letter. Without this information the Court is unable to make a determination as to damages and must reserve its ruling on this issue until trial.

## IV. Conclusion

In conclusion, the Court finds that Mr. Kimball's promises fall within the main purpose exception to the statute of frauds and, therefore, DENIES Mr. Kimball's motion for summary judgment. As to Plaintiff's motion, the Court finds that a material factual dispute exists involving the oral contract between Wolff Ardis and Mr. Kimball. Accordingly, the Court DENIES Wolff Ardis's motion as it relates to the oral contract. However, the Court finds that there are no issues of fact as to the written contract between the law firm and Kimball Products and GRANTS Wolff Ardis's motion for breach of contract on the written contract.

---

11. The Court: Whether or not Mr. Kimball owes the money?

  Mr. Libby: Whether Ron Kimball in his individual capacity is liable for the debt in addition to Kimball Products.
  The Court: Okay. But it is undisputed that Kimball Products would owe the money?

  Mr. Libby: It is undisputed that Kimball Product owes a significant portion of the money.
  (Tr. Oct. 7, 2003 at 6:21–7:4.)

12. Because the Court finds that the parties had an enforceable contract, the Court does not reach the unjust enrichment argument as it pertains to the written contract.